IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION


SHELIA LEWIS,                          *
                                       *
            Plaintiff,                 *
                                       *
vs.                                    *        No. 4:10CV00062 SWW
                                       *
GRAPHIC PACKAGING                      *
INTERNATIONAL, INC.,                   *
                                       *
            Defendant.                 *


**Memorandum Opinion and Order**

Before the Court is defendant's motion for summary judgment to which plaintiff

responded.  Defendant filed a reply to the response.  For the reasons stated below, the Court finds

the motion for summary judgment should be granted.

**Background[1]**

Plaintiff Shelia Lewis ("Lewis"), a black female, began working for defendant Graphic

Packaging International, Inc. ("Graphic")[2] in 1994.  As a production employee in the Sewing

Department, she was represented by the United Steel, Paper and Forestry, Rubber, Manufacturing,

Energy, Allied Industrial and Service Workers International Union ("the Union").  During Lewis's

employment, Graphic and the Union were parties to a series of collective bargaining agreements

which set certain terms of employment.  Lewis received at least thirteen separate documented

---

[1]These background facts are taken mainly from the parties' statements of undisputed facts.  *See*
docket entries 14 & 17.

[2]According to Lewis, Graphic is a successor employer to Altivity Packaging, LLC, Smurfit Stone,
and Stone Container Corporation.  For simplicity, the term "Graphic" refers to Graphic Packaging
International, Inc. and its predecessors, which employed Lewis.

reprimands for attendance issues between July 1996 and July 2008.          On July 22, 1996, Lewis received a verbal warning for being disrespectful to her immediate supervisor.  On February 10, 1998, Lewis received a verbal warning for yelling profanity at a fellow employee and being out of her work area without permission.  On February 6, 2001, Lewis received a written warning for leaving work without permission.  On July 26, 2001, Lewis received a written warning for using profanity and racial epithets, and for engaging in disruptive conduct on the plant floor. Graphic provided Lewis with a copy of the Workplace Harassment Policy along with the discipline.  On August 8, 2001, Lewis received a suspension in lieu of termination for violation of the Workplace Harassment Policy and Plant Rules on Harassment when Lewis shouted orders and directives to a co-worker.

On July 25, 2005, Lewis received a suspension in lieu of termination for violation of Workplace Harassment Policy and Plant Rules on Harassment when Lewis made "vile and unsavory" comments to and about a co-worker.  On June 12, 2007, an employee meeting was held to discuss Lewis's inability to get along with a co-worker.  Lewis again was provided a copy of the policy regarding workplace harassment.  On July 17, 2007, Lewis received a verbal warning for violation of the Anti-Harassment and Workplace Violence policies when Lewis had a verbal altercation with a co-worker in the restroom.  On October 3, 2007, Lewis received a verbal warning for making rude and loud comments toward other employees during a safety meeting.

In October 2007, a hostile work environment complaint was made against Lewis to the Corporate Human Resources Department.  Ms. Jacinta Carter, a black female and Corporate Human Resources Director from Marietta, Georgia, visited the Jacksonville, Arkansas plant to investigate the complaint.  Lewis was placed on suspension pending the results of the investigation.  Although there were several allegations against Lewis and a long history of anti-

2

harassment policy violations, Lewis was not disciplined and she was paid for the time she was suspended.

After the investigation was complete, each of the Sewing Department employees, including Lewis, was issued a letter reminding them of the Anti-Harassment Policy, along with a copy of the policy.  Ms. Emily Wilmoth, Human Resources Manager at the Jacksonville plant, conducted a separate meeting with Lewis and Union Local President Louis Hobbs to review Lewis's discipline history.  During the meeting, Graphic informed Lewis that she remained on final warning and that "any future violations of the Anti-Harassment Policy of [sic] the Workplace Violence Policy would result in her immediate discharge."

On April 16, 2008, Alice Pace, a black female Sewing Department co-worker of Lewis, complained to Human Resources that Lewis called Pace a bitch.  Wilmoth investigated the allegation, but there was no corroborating evidence so no discipline was issued.  Once again, Wilmoth reminded Lewis of Graphic's expectations regarding future behavior and advised her that the situation would be closely monitored.  In the early morning hours on or about Tuesday, February 24, 2009, Pace complained to her supervisor, Ricky Cox, that Lewis had used profanity and talked bad about her.  Cox reported the incident to Wilmoth by email.  Pace indicated to Cox that she wanted to complain to Narzell Davenport, the Site Manager at the time, about Lewis's actions.  Davenport was replaced as Site Manager by Tyrone Jefferson at the beginning of March 2009.  Pace did not advance her complaint to Davenport or Human Resources on February 24, 2009, after Phillip Ford, a Union officer, requested that she refrain from doing so.  Ford intervened after Cox told Ford that Lewis and Pace likely would be disciplined if a complaint were made to Davenport or Human Resources.  No incidents between Pace and Lewis occurred for the remainder of that work week because Lewis was off work.  Because Pace did not make a

3

complaint, no action was taken on the February 24, 2009, incident.

On the following Monday, March 2, 2009, Pace and Lewis were working on opposite ends of the same three sewing machines.  Pace was "loading" the machines with bags for sewing and taping and Lewis was inspecting the bags as they came out of the machines.  Pace was responsible for making sure that tape was loaded into the machines, but one of the machines ran out of tape and began producing bags with no tape.  When Lewis discovered bags coming out of the machine with no tape, she shut down the machine.

Arnold Corben, the supervisor on duty, came to the Sewing Department to see why the machine was shut down, and Lewis showed Corben the bags with no tape.  Corben was aware that there was a problem going on between Pace and Lewis, so Corben contacted the Department Manager, Jim Wilson.  Wilson instructed Corben to immediately take Pace and Lewis to Human Resources because of the history of problems in the Sewing Department.  When Pace and Lewis arrived in the Human Resources Department on the morning of March 2, 2009, Pace complained about the incident that occurred on February 24, 2009, when Lewis used profanity and harassed Pace.  Pace stated that Lewis continued the harassment on March 2, 2009, by making fun of Pace about the bags with no tape.  Lewis denied Pace's allegations and stated she had said nothing to Pace.

Wilmoth suspended Pace and Lewis pending an investigation into Pace's allegations of harassment.  Wilmoth interviewed and took statements from several witnesses about the incident that occurred on February 24, 2009.  Robert Bryant, Sr., a black male operator of the machine where Pace was working on February 24, 2009, stated that Lewis "came from way over in her section" and said, referring to Pace, "Let that bitch do her own damn job!  I want to kick her ass anyway."  Bryant stated that Pace "never said anything" to Lewis.  Bryant also stated that Lewis

4

called him over to her machine and said that Pace "was a lazy bitch and did not want to do her job." Bryant said that he never heard Pace talk back to or curse Lewis. Brenda Estes, a black female Sewing Department co-worker of Lewis and Pace, stated that on February 24, 2009, she witnessed Lewis approach Pace, put her hands on her hips, and talk "at" Pace "or about her." Estes said that she "couldn't hear what [Lewis] was saying but [Estes] could tell [Lewis] was talking about [Pace]." Estes also said that Pace "didn't do anything."

Canary Reed, another black female Sewing Department co-worker of Lewis and Pace who was working next to Pace on February 24, 2009, stated that Lewis "hollered" at Pace from a distance. Reed stated that "after a few minutes," Lewis "started yelling at [Pace] and "telling her were [sic] she needed to work." Reed said that Pace ignored Lewis. Brenda Thompson, a white female Sewing Department co-worker of Lewis and Pace, stated that she witnessed Lewis hollering in Pace's face while Pace ignored Lewis. Thompson stated that she was too far away to hear what she was saying, but that Lewis kept after Pace for thirty minutes to an hour. Stephanie Estes, a black female co-worker of Lewis and Pace, said that Lewis was loud and cussing because she was mad at Pace. Estes said Pace continued working and kept a cool head. Carrie Quarry, a white female Sewing Department co-worker of Lewis and Pace, stated Lewis was showing people the bags that were produced without tape when Pace let the tape run out of the machine. Quarry stated that Lewis "had to show a lot of people the bad bags" to make fun of Pace and that Lewis would not give the bags to Pace when Pace came to retrieve them. Quarry said that Pace never said a word to Lewis. Based on the results of her investigation of the two incidents and Lewis's history of harassing behavior, Wilmoth recommended that Lewis be terminated for violating Graphic's Anti-Harassment Policy.

Tyrone Jeffcoat who had just transferred in from another Graphic location to take over for

Davenport as Site Manager in Jacksonville, concurred with Wilmoth's recommendation that Lewis be terminated based on the witness statements, Lewis's track record of harassing behavior, and the fact that Lewis had been warned that further issues would result in termination. Lewis was terminated on March 10, 2009. James Wilson was the supervisor who issued her termination notice.

The Union filed a grievance on behalf of Lewis and requested that she be returned to her job on a Last Chance Agreement. On March 17, 2009, a grievance meeting was held during which the Union requested that Graphic expand its investigation to include additional witnesses, and reiterated its request that Lewis be returned to work on a Last Chance Agreement. During the grievance meeting, Jeffcoat asked Lewis specifically what she would do differently in the future if he granted the Union's request to return her to work. Lewis replied that she would not change anything because she had not done anything wrong. Jeffcoat testified that Lewis gave no indication to him that she recognized her behavior was disruptive and inappropriate in the workplace. Jeffcoat considered the fact that Lewis had received two previous suspensions in lieu of termination as tantamount to her having already received a Last Chance Agreement. After considering Lewis's comments at the grievance meeting and reviewing statements from other employees in the Sewing Department, Jeffcoat found no evidence to warrant the granting of a Last Chance Agreement and denied the Union's grievance on March 24, 2009.

The Union held a meeting on April 5, 2009, to vote on whether to arbitrate the denial of the grievance requesting a Last Chance Agreement for Lewis. The Union membership voted against arbitration of the grievance. According to Barry Strange, the Union representative, the Union did not feel the merits of the grievance warranted taking the case to arbitration.

Lewis filed a charge of discrimination with the Equal Employment Opportunity

Commission, and filed a complaint in federal court within 90 days of receiving her right-to-sue

letter.  Lewis alleges discrimination based on race and sex in violation of Title VII of the Civil

Rights Act of 1964, as amended by the Civil Rights Act of 1991, codified at 42 U.S.C. § 2000(e);

42 U.S.C. §1981; and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101 *et seq.*

("ACRA").

      Graphic moves for summary judgment, arguing Lewis cannot establish a *prima facie* case

of discrimination and, even if she can, she has no evidence that Graphic's reason for terminating

her was a pretext for unlawful discrimination.

## Standard of Review

      Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed.R.Civ.P. 56(c).  As a prerequisite to summary judgment, a moving party must

demonstrate "an absence of evidence to support the non-moving party's case."  *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for

summary judgment, the non-moving party must "do more than simply show there is some

metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v.  Zenith Radio Corp.,*

475 U.S. 574, 586 (1986).  The non-moving party may not rest on mere allegations or denials of

her pleading but must "come forward with 'specific facts showing that there is a genuine issue for

trial.'"  *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)).

      "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed

fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury

could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## Discussion

Lewis claims she was terminated because of her race and sex. In the absence of direct evidence, a plaintiff asserting a claim of discrimination under Title VII[3] has the initial burden of establishing a *prima facie* case. A plaintiff establishes a *prima facie* case by showing that: (1) she was a member of a protected class; (2) she was meeting the employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) she has facts that give rise to an inference of discrimination. *Takele v. Mayo Clinic,* 576 F.3d 834, 838 (8th Cir. 2009). A plaintiff may establish the fourth prong by producing facts that similarly situated employees outside the protected class were treated differently. *Id.*

If the plaintiff establishes the elements of a *prima facie* case, then the employer has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action. *McDonnell Douglas Corp.,* 411 U.S. 792, 802 (1973). Once the employer satisfies its

---

[3]The framework for analyzing a discrimination claim brought pursuant to 42 U.S.C. § 1981 is the same as that used for one brought pursuant to Title VII. *See Reedy v. Quebecor Printing Eagle, Inc.,* 333 F.3d 906, 907 (8th Cir. 2003). The *McDonnell Douglas* framework also applies to claims brought under the Arkansas Civil Rights Act. *See Henderson v. Simmons Foods, Inc.,* 217 F.3d 612, 615 n.3 (8th Cir. 2000).; *Kim v. Nash Fi0nch Co.,* 123 F.3d 1046, 1056 (8th Cir. 1997).

burden of production, any rebuttable presumption of discrimination disappears, and the plaintiff

must prove that the proffered reasons are a pretext for discrimination. *Id.* The burden of proof

remains at all times with the plaintiff to establish that she was the victim of unlawful

discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 5-2 (1993).

      Graphic argues Lewis cannot establish the second and fourth elements of her *prima facie*

case because she was not meeting her employer's legitimate job expectations when she violated

the Anti-Harassment Policy and there are no facts that permit an inference of discrimination based

on race or sex.      In response, Lewis denies she made derogatory or harassing comments to

Pace on March 2, 2009, and asserts that two white males who were involved in a physical

altercation were given Last Chance Agreements, and one white male was given more than one

Last Chance Agreement after committing safety violations.

      The Court finds Lewis fails to establish a *prima facie* case of discrimination because she

cannot show an inference of race or sex discrimination.  Lewis alleges she was treated less

favorably than similarly situated white male employees, specifically Kevin Eschbacher, Larry

Sanders, and Bobby Roberts.

> The test to determine whether employees are 'similarly situated' to warrant a
> comparison to a plaintiff is a 'rigorous' one. 'Instances of disparate treatment can
> support a claim of pretext, but [plaintiff] has the burden of proving that he and the
> disparately treated [employees] were similarly situated in all relevant respects.'
> Specifically, the individuals used for comparison must have dealt with the same
> supervisor, have been subject to the same standards, and engaged in the same
> conduct without any mitigating or distinguishing circumstances.  To be probative
> evidence of pretext, the misconduct of more leniently disciplined employees must
> be of 'comparable seriousness.'

*E.E.O.C. v. Kohler Co.,* 335 F.3d 766, 775 -776 (8th Cir. 2003)(internal citations omitted).

      Eschbacher and Sanders work in the Tubing Department of Graphic.  Eschbacher was

terminated on or about December 17, 2007, after he was involved in a physical altercation with

Sanders at work.  Eschbacher had received no violence or harassment-related discipline prior to his termination.  The supervisor who issued the termination notice was Mark Stolki.  After Eschbacher was terminated, Graphic agreed to the Union's request to return him to work on a Last Chance Agreement. Richard Moak was the Site Manager who agreed on behalf of Graphic to enter into the Last Chance Agreement, at least in part because Eschbacher had no history of previous harassment or violence.  According to Lewis, Sanders was suspended but not terminated. Eschbacher and Sanders worked in a different department and had a different supervisor than Lewis.  Different managers made the disciplinary decisions regarding Lewis,  Eschbacher, and Sanders. Further, Lewis has a history of workplace harassment, including at least two separate suspensions in lieu of termination.  The Court finds Eschbacher, Sander, and Lewis are not similarly situated.

According to Lewis, Roberts committed safety violations and received more than one Last Chance Agreement.  Lewis admits Roberts worked in a different department, had a different supervisor, and was disciplined for offenses not related to harassment.  The decision to give Roberts a Last Chance Agreement was made by a different decision-maker.  The Court finds Roberts and Lewis are not similarly situated.

Even assuming *arguendo* that Lewis can establish a *prima facie* case, the Court finds Graphic has articulated a legitimate, nondiscriminatory reason for Lewis's discharge.  Graphic asserts Lewis's termination was the result of violations of the Anti-Harassment Policy.  Lewis admitted she was warned on multiple occasions that any additional violations of Graphic's Anti-Harassment Policy would result in her termination.  She also admitted that her conduct had "the effect of creating an intimidating, hostile, or offensive work environment," a violation of the

Policy.[4]

Lewis has the burden to produce evidence sufficient to create a genuine issue of material fact regarding whether Graphic's reason for her termination was pretextual.  Unsubstantiated and conclusory allegations are insufficient to support an inference of pretext.  *Rose-Matson v. NME Hosp., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998).  Lewis has produced no factual evidence supporting her claim that Graphic's decision to terminate her employment was based on race or sex.

## Conclusion

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [docket entry 12] be and is hereby granted.  Judgment will be entered for defendant.

DATED this 15th day of February, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[4]*See* Pl's. Resp. to Def's. Statement of Undisputed Facts at ¶59.